UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE DIAZ,<br><br>      Plaintiff,<br><br>    v.<br><br>ANDREW SAUL, Commissioner of Social Security,[1]<br><br>      Defendant. | No. 2:18-cv-1225 DB<br><br><br><br>ORDER |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[2] Plaintiff's motion argues that the Administrative Law Judge erred by improperly rejecting witness testimony and by finding that plaintiff did not meet a Listing Impairment.

////

////

---

[1] Andrew Saul became the Commissioner of the Social Security Administration on June 17, 2019. See https://www.ssa.gov/agency/commissioner.html (last visited by the court on July 30, 2019). Accordingly, Andrew Saul is substituted in as the defendant in this action. See 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] Both parties have previously consented to Magistrate Judge jurisdiction over this action pursuant to 28 U.S.C. § 636(c). (See ECF Nos. 7 & 13.)

1

For the reasons explained below, plaintiff's motion is granted, the decision of the Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for further proceedings consistent with this order.

**PROCEDURAL BACKGROUND**

In January of 2015, plaintiff filed applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and for Supplemental Security Income ("SSI") under Title XVI of the Act alleging disability beginning on January 1, 2014. (Transcript ("Tr.") at 19, 221-22, 224-28.) Plaintiff's alleged impairments included major depressive disorder with psychotic features and schizophrenia. (Id. at 253.) Plaintiff's applications were denied initially, (id. at 123-27, 129-33), and upon reconsideration. (Id. at 138-42, 144-49.)

Plaintiff requested an administrative hearing and a hearing was held before an Administrative Law Judge ("ALJ") on December 22, 2016. (Id. at 38-72.) Plaintiff was represented by an attorney and testified at the administrative hearing. (Id. at 38-40.) In a decision issued on April 7, 2017, the ALJ found that plaintiff was not disabled. (Id. at 32.) The ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2014.
>
> 2. The claimant has not engaged in substantial gainful activity since January 1, 2014, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).
>
> 3. The claimant has the following severe impairments: depression; ADHD; paranoid schizophrenia (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: he can exercise only simple work-related judgments; he can handle no more than occasionally (sic) changes to the routine work setting; he can perform routine, repetitive working (sic) a stable environment; he cannot be expected to work as a member of a team, but is capable of being in the same work environment with

|   |   |
|---|---|
| 1 | coworkers; he can occasionally interact with coworkers and supervisors; he can have no interaction with the public; he cannot be expected to engage in independent planning and goal setting but can understand, remember and carry out fixed plans and goals when performing routine and repetitive work. |
| 2 | |
| 3 | |
| 4 | 6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965). |
| 5 | |
| 6 | 7. The claimant was born [in] 1992 and was 21 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963). |
| 7 | |
| 8 | 8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964). |
| 9 | 9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968). |
| 10 | |
| 11 | 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)). |
| 12 | |
| 13 | 11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2014, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)). |
| 14 | |

(Id. at 22-31.)

On March 12, 2018, the Appeals Council denied plaintiff's request for review of the ALJ's April 7, 2017 decision. (Id. at 1-5.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on May 15, 2018. (ECF. No. 1.)

**LEGAL STANDARD**

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir.

1989)).  If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  The five-step process has been summarized as follows:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).  The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff's pending motion argues that the ALJ committed the following two principal errors: (1) the ALJ improperly rejected witness testimony; and (2) the ALJ erroneously found that plaintiff did not meet a Listing Impairment.[3]  (Pl.'s MSJ (ECF No. 16) at 8-21.[4])

---

[3] The court has reordered plaintiff's claims for purposes of clarity and efficiency.

[4] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

4

## I. Witness Testimony

### A. Plaintiff's Subjective Testimony

Plaintiff's motion for summary judgment challenges the ALJ's treatment of plaintiff's subjective testimony. (Pl.'s MSJ (ECF No. 16) at 16-21.) The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so[.]

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). "The clear and convincing standard is the most demanding required in Social Security cases." Moore v. Commissioner of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking[.]" Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints."[5] Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595,

---

[5] In March 2016, Social Security Ruling ("SSR") 16-3p went into effect. "This ruling makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." Trevizo v. Berryhill, 871 F.3d 664, 679 (9th Cir. 2017) (quoting SSR 16-3p) (alterations omitted).

599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id.

Here, the ALJ summarized plaintiff's testimony as follows:

> The claimant alleges a combination of impairments causing chronic fear, disturbances with others, and anger, accompanied by depression and anxiety, limiting activities of daily living, social functioning, understand, remember or apply information as well as maintain concentration, persistence and pace. He testified to having paranoia, hearing persons talking, believing there were cameras and microphones tracking him as well as anger problems. He has had two episodes, November-December 2014 and November-December 2016, where he needed to be hospitalized due to his mental problems. He has a hard time communicating with people, speaking, concentrating and thinking. He isolates, is afraid to go places alone, or out when it's dark. Side effects of medications include nausea and headaches.

(Tr. at 26.)

The ALJ then concluded that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reason explained in [the] decision." (Id.) The ALJ based this determination on two principal findings.

The first reason asserted by the ALJ was that "findings at the time of mental status examinations" did not "correspond to the level of mental health symptoms alleged while [plaintiff's] conditions are controlled and improved with the treatment he receives." (Id.) However, "after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity" of the symptoms. Burch v. Barnhart, 400 F.3d 676, 680

6

(9th Cir. 2005); see also Putz v. Astrue, 371 Fed. Appx. 801, 802-03 (9th Cir. 2010) ("Putz need not present objective medical evidence to demonstrate the severity of her fatigue."); Lingenfelter, 504 F.3d at 1036 ("the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged."); Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991) ("If an adjudicator could reject a claim for disability simply because a claimant fails to produce medical evidence supporting the severity of the pain, there would be no reason for an adjudicator to consider anything other than medical findings.").

Moreover,

> . . . it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.

Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014). "'[T]he prognosis of chronic schizophrenia may well include periods between acute bouts in which symptoms, while controlled enough to permit life outside an institution, still prevent the patient from pursuing normal employment.'" Esselstrom v. Chater, 67 F.3d 869, 872-73 (9th Cir. 1995) (quoting Pagan v. Bowen, 862 F.2d 340, 343 (D.C. Cir. 1988)).

The second reason offered by the ALJ was that plaintiff's testimony was "challenged by the opinions of record of evaluating physicians." (Id. at 29.) Those physicians, however, were "non-examining" physicians who had "no access to the full medical records[.]" (Tr. at 29.) Nonetheless, the ALJ asserted these opinion were supported, in part, by plaintiff's "conservative treatment[.]" (Id.) However, repeated psychiatric hospitalization is not conservative treatment. See generally Kuharski v. Colvin, No. 2:12-cv-1055 AC, 2014 WL 3385183, at *4 (E.D. Cal. July 10, 2014) ("the Court affirms its finding that the ALJ's reliance on the lack of hospitalization is unreasonable and does not constitute a clear and convincing reason for rejecting plaintiff's credibility regarding his mental limitations").

////

7

The ALJ also asserted that the non-examining physician opinions were supported by plaintiff's "rather ordinary range of activities of daily living[.]" (Tr. at 29.) However,

> [t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons ... and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.

Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012). The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be utterly incapacitated in order to be disabled." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001); see also Garrison, 759 F.3d at 1016 (citation omitted) ("[I]mpairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day.").

In this regard, the "nonexamining physicians' conclusion, with nothing more, does not constitute substantial evidence[.]" Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990). Perhaps most importantly, plaintiff's testimony was supported by ample evidence in the record. The ALJ's decision noted as much, stating:

> The record substantiates the claimant's allegations of severe mental impairments. Treating sources diagnosed major depressive disorder with psychotic features, or psychotic disorder, not otherwise specified, schizoaffective disorder, along with a history of ADHD. He was treated with multiple psychiatric medications.

(Tr. at 26.) The ALJ's decision repeatedly misstates that plaintiff was hospitalized as a result of mental health impairments on two occasions. (Id. at 25, 26, 29.) Plaintiff was, in fact, admitted for psychiatric hospitalization on four separate occasions.

On November 14, 2014, plaintiff was "admitted on a 5150 for danger to self, danger to others." (Id. at 319.) The Woodland Police Department reported that plaintiff was "threatening to batter his family members," and "tried to cut himself with a blade superficially and then reported he wanted to kill himself by cutting his wrist." (Id. at 319.) Family members reported

that plaintiff believed there were "cameras in his room and that they were selling his information." (Id.) Plaintiff was discharged on November 19, 2014. (Id. at 324.)

On December 4, 2014, plaintiff "was admitted on a 5150 due to danger to self." (Id. at 362.) Plaintiff "was having thoughts of suicide and complaining of auditory hallucinations. He was very confused, scared, making bizarre statements, 'I feel my mouth move.'" (Id.) Plaintiff was discharged on December 13, 2014. (Id. at 365.)

Plaintiff was again admitted on December 21, 2015. (Id. at 544.) Plaintiff "was not able to manage his symptoms of depression or anger," and was experiencing "severe impairment in functioning." (Id.) Plaintiff "was disorganized, agitated, and has been diagnosed with psychosis, schizophrenia, schizoaffective disorder." (Id.) Plaintiff was discharged on December 30, 2015. (Id. at 546.) Plaintiff was once again admitted "on a 5150 hold do (sic) to erratic behavior at his family's home" on November 29, 2016. (Id. at 749.) Plaintiff exhibited "erratic, disorganized, delusional, and pressured behavior[.]" (Id.) Plaintiff was discharged on December 8, 2016. (Id.)

And the record establishes that plaintiff experienced considerable impairment when not hospitalized. On February 10, 2015, plaintiff reported that "he is still feeling like they are talking about him[.]" (Id. at 459.) On June 23, 2015, plaintiff acknowledged experiencing suicidal and homicidal ideation. (Id. at 609.) An October 21, 2015 mental status examination found plaintiff to be "sad, irritable," with suicidal ideation," and "paranoid delusions that people talk about him." (Id. at 605.) On December 20, 2015, plaintiff was "escorted by Woodland PD and placed on a 5150 hold," after "having auditory hallucinations and recent suicidal ideation[.]" (Id. at 563.)

For the reasons stated above, the court finds that the ALJ failed to provide a clear and convincing reason for rejecting plaintiff's testimony concerning plaintiff's mental impairments. Plaintiff, therefore, is entitled to summary judgment as to this claim.

**B.    Lay Witness Testimony**

Plaintiff's motion for summary judgment also assert that the ALJ improperly rejected the lay witness testimony offered by plaintiff's mother. (Pl.'s MSJ (ECF No. 16) at 14-16.) The testimony of lay witnesses, including family members and friends, reflecting their own observations of how the claimant's impairments affect his activities must be considered and

9

discussed by the ALJ. Robbins, 466 F.3d at 885; Smolen, 80 F.3d at 1288; Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). Persons who see the claimant on a daily basis are competent to testify as to their observations. Regennitter, 166 F.3d at 1298; Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993). If the ALJ chooses to reject or discount the testimony of a lay witness, he or she must give reasons germane to each particular witness in doing so. Regennitter, 166 F.3d at 1298; Dodrill, 12 F.3d at 919.

The mere fact that a lay witness is a relative of the claimant cannot be a ground for rejecting the witness's testimony. Regennitter, 166 F.3d at 1298; Smolen, 80 F.3d at 1289. Moreover, "the reasons 'germane to each witness' must be specific." Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting Stout v. Comm'r, 454 F.3d 1050, 1054 (9th Cir. 2006)). However, the ALJ may cite the same reasons for rejecting plaintiff's statements to reject third-party statements where the statements are similar. See Valentine, 574 F.3d at 694 (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

Here, the ALJ acknowledged the lay witness testimony, characterizing it as "similar to the claimant's allegations." (Tr. at 30.) The ALJ, however, accorded the testimony "no weight" for two reasons. One reason was the ALJ's finding that plaintiff's mother was not "an acceptable medical source." (Id.) "This statement is clearly erroneous. Lay witness testimony is by definition testimony not provided by an acceptable medical source." Gonzales v. Berryhill, No. 2:15-cv-1771 DB, 2017 WL 1079913, at *9 (E.D. Cal. Mar. 21, 2017).

The other reason offered by the ALJ for affording no weight to the lay witness testimony was the finding that the testimony was "not fully supported by the evidence" reviewed in connection with the ALJ's analysis of plaintiff's testimony. (Tr. at 30.) As noted above, the ALJ erroneously rejected plaintiff's testimony concerning plaintiff's mental limitations. That erroneous analysis cannot serve as a germane reason to reject the lay witness testimony concerning plaintiff's mental limitations. See generally Robbins v. Social Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) ("Because the ALJ did not make a legally sufficient adverse credibility finding with regard to Robbins's own testimony, we cannot say with respect to Rodney's

10

testimony that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.").

Accordingly, the ALJ failed to provide a germane reason for rejecting the lay witness testimony. Plaintiff, therefore, is also entitled to summary judgment on this claim.

**II.     Listing Impairment**

At step three of the sequential evaluation, the ALJ must determine whether a claimant's impairment or impairments meet or equal one of the specific impairments set forth in the Listings. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The physical and mental conditions contained in the Listings are considered so severe that "they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or any other jobs." Lester, 81 F.3d at 828. The Listings were "designed to operate as a presumption of disability that makes further inquiry unnecessary." Sullivan v. Zebley, 493 U.S. 521, 532 (1990); see also Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001). If a claimant shows that his impairments meet or equal a Listing, he will be found presumptively disabled. 20 C.F.R. §§ 404.1525-404.1526, 416.925-416.926.

The claimant bears the burden of establishing a prima facie case of disability under the Listings. See Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002). To "meet" a listed impairment, the claimant must establish that his condition satisfies each element of the listed impairment. See Zebley, 493 U.S. at 530; Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999). To "equal" a listed impairment, the claimant "must establish symptoms, signs, and laboratory findings" at least equal in severity and duration to each element of the listed impairment. Id.

"An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." Lewis, 236 F.3d at 512 (citing Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990) ("We hold that, in determining whether a claimant equals a listing under step three of the Secretary's disability evaluation process, the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments.")).

////

Moreover, an "ALJ must provide a discussion of the evidence and an explanation of reasoning for his conclusion sufficient to enable meaningful judicial review." Diaz v. Commissioner of Social Sec., 577 F.3d 500, 504 (3rd Cir. 2009) (quotation omitted); see also Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) ("The ALJ's decision regarding the applicability of Listing 1.04A is devoid of reasoning. . . . This insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings.").

Here, at step three of the sequential evaluation the ALJ found that plaintiff's "mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.03, 12.04, and 12.11."[6] (Tr. at 24.) In this regard, the ALJ found as follows:

> In making this finding, I have considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least one extreme or two marked limitations in a broad area of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves. A marked limitation means functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited. An extreme limitation is the inability to function independently, appropriately or effectively, and on a sustained basis.
>
> In understanding, remembering, or applying information, the claimant has mild limitations. He is independent in self-care and can perform light household chores. He shops and uses a bus for transportation. He attends community college and is within few classes of transferring to a university, can use a smart phone and a computer. He demonstrates an ability to attend medical appointments, represent his interests with regard to physical and mental conditions, discuss and evaluate prescribed medications or other treatment modalities, all of which evidences mild limitations in the capacity to understand, remember or apply information (Exhibit 5E-6E, 5F, 7F- 8F, l0F-llF, 13F-14F and hearing testimony).

////

---

[6] According to the regulations applicable at the time of the ALJ's decision, Listing 12.03 concerned "Schizophrenia spectrum and other psychotic disorders." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.03 (Mar. 27, 2017). Listing 12.04 concerned "[d]epressive, bipolar and related disorders . . . characterized by an irritable, depressed, elevated, or expansive mood, or by a loss of interest or pleasure in all or almost all activities, causing a clinically significant decline in functioning." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.04 (Mar. 27, 2017). And Listing 12.11 concerned "[n]eurodevelopmental disorders." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.11 (Mar. 27, 2017).

12

> In interacting with others, the claimant has moderate limitations. He lives and spends time with family, his parents and sisters, but has hallucinations about people hacking his computer, is paranoid about other people in class, or neighbors and anger which cause problems with others. He has a single friend. Overall I find moderate social limitations (Exhibit SE-6E, SF, 7F-8F, l0F-1lF, 13F-14F and hearing testimony).
>
> As for adapting or managing oneself, the claimant has experienced moderate limitations. Claimant generally sustains ordinary life activities in and about his home however has two episodes of decompensation during the period at issue, necessitating hospitalization and treatment until stabilized (Exhibit 6E, 12F and 15F).
>
> Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.
>
> The claimant's mental impairments do not satisfy the paragraph "C" criteria of the applicable mental disorder listings. The record does not establish that the claimant has only marginal capacity to make adjustments, that is, a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life. The evidence of record regarding his ability to understand, remember and apply information as well as in concentrating, persisting, or maintaining pace for a rather ordinary range of activities of daily living, being a community college student, able to effectively seek and register for classes, attend, do homework, use a bus for transportation, shop, as well as play video games for hours at a time, online chat, use a phone for game playing, along his generally within normal interactions in his social environments (home, school and at treatment facilities), as well as his capacity to adapt and manage himself without (sic) only two episodes of exacerbation with psychiatric hospitalizations, supports this finding.

(Tr. at 24-25.)

An ALJ's step three finding is based, in part, on "[e]vidence from [plaintiff] and people who know [the plaintiff]." 12.00(C)(3). 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(C)(3) (Mar. 27, 2017). Here, the ALJ erroneously rejected plaintiff's testimony and the testimony of plaintiff's mother. And, as noted above, it appears the ALJ misunderstood the evidence as it relates to the number of times plaintiff was hospitalized.

Moreover, it is difficult understand how the ALJ reached some findings in light of the evidence of record. For example, the ALJ found that plaintiff experienced only "moderate limitations" in adapting or managing oneself because plaintiff "sustains ordinary life activities in and about his home" while admitting that plaintiff experienced "two episodes of decompensation

13

. . . necessitating hospitalization[.]" (Tr. at 24). The ALJ also found that plaintiff had only "moderate limitations" in interacting with others. (Id.) The ALJ based this finding on plaintiff's ability to live with and spend time with family but acknowledged that plaintiff "has hallucinations about people hacking his computer, is paranoid about other people in class, or neighbors and anger which cause problems with others." (Id.)

A "moderate limitation" equates to a finding that plaintiff's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. Pt. 404, Subpt. P, App. 1 12.00(F)(2)(c). It is not clear how plaintiff's symptoms of hallucinations, paranoia, suicidal, and homicidal ideation can be properly characterized as allowing for "fair" functioning on a sustained basis—even assuming plaintiff had only experienced two hospitalizations, let alone four. Again, this seeming incongruity may be the result of the ALJ's erroneous rejection of the testimony offered by plaintiff and plaintiff's mother.

Nonetheless, on this record the court cannot say that the ALJ's step three finding is free from error and supported by substantial evidence in the record. Accordingly, plaintiff is also entitled to summary judgment on this claim.

**CONCLUSION**

After having found error, "'[t]he decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" Trevizo, 871 F.3d at 682 (quoting Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison, 759 F.3d at 1020.

Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at

1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the court cannot say that further proceedings would serve no useful purposes. This is especially true as the record appears to lack an opinion from a treating or examining physician.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 16) is granted;

2. Defendant's cross-motion for summary judgment (ECF No. 21) is denied;

3. The Commissioner's decision is reversed;

4. This matter is remanded for further proceedings consistent with this order; and

5. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

Dated: September 18, 2019

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.soc sec\diaz1225.ord